# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JAMES A. DALY, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:22-CV-00259 JAR |
| CITY OF DE SOTO, MISSOURI, and JEFF MCCREARY, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion for summary judgment in this employment dispute. (Doc. 26). For the following reasons, the motion will be granted.

**I.   Background**

Plaintiff James Daly was a patrol officer for the City of De Soto from March 2019 until he was terminated in November 2020. Defendants are the City of De Soto, Missouri, and its Chief of Police, Jeff McCreary.[1]

Daly, who previously served 20 years as a St. Louis City police officer, was promoted to Sergeant for the City of De Soto in November 2019, roughly nine months after he was hired. In early 2020, one of his subordinates, Bethany Zarcone, informed him that another officer was spreading rumors about her having relations with other members of the department. Zarcone did not wish to file a formal complaint of sexual harassment for fear of professional repercussions.

---

[1] Absent a clear indication that Daly intended to sue Chief McCreary in his individual capacity, the Court interprets the complaint to assert claims against this defendant in his official capacity. *See Remington v. Hoopes*, 611 Fed. Appx. 883, 885 (8th Cir. 2015). A suit against a public employee in his official capacity is merely a suit against the public employer. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir.1999). Accordingly, the Court will dismiss Daly's claims against Defendant McCreary.

After multiple rumors circulated, in March 2020, Daly reported the situation to Chief McCreary, who initiated an investigation to put a stop to it. Although the investigation was inconclusive as to the source of the rumors, Daly was commended for his attention to the matter. (Doc. 26-4 at 47). Nonetheless, Daly experienced alienation from his colleagues and superiors. Specifically, Daly alleges that he was shunned for reporting other instances of misconduct by fellow officers; he was excluded from a lunch outing; he was ignored at social events; and McCreary embarrassed him in a staff meeting by dispelling a rumor that Daly would succeed him as Chief, stating it was "not going to happen." In late summer of 2020, Daly complained to his superior about a hostile work environment. (Doc. 31-9 at 3). In deposition, Daly acknowledged that there were hostilities throughout the department stemming from the Zarcone investigation – a "platoon war" – but he stated that it was more directly pointed at him. (Doc. 26-1 at 78, 57). Daly explained that he was hired to bring more professionalism to the department but was "met with nothing but resistance and high school stuff." (*Id*. at 77).

Concurrent with these internal tensions, in the spring of 2020, Daly alerted Chief McCreary that he was embroiled in interpersonal conflicts with his neighbors escalating to the point that one had sought an order of protection against him. McCreary advised Daly to "stay out of the fray" to protect his job and his ability to carry a firearm. (Doc. 26-3 at 6). In July 2020, a neighbor's attorney posted on Facebook a photo of Daly's yard in October 2019, decorated as a cemetery for Halloween, depicting a crucifix with the epitaph "Here lies Michael Brown, a fat ghetto clown." In October 2020, this photo was re-posted alongside a photo of Daly identified as a De Soto police officer. (Doc. 26-6 at 3). This post went viral, causing national outrage, a local protest, and a public relations crisis for the City. Daly gave inconsistent explanations in attempts to distance himself from the display. First, he claimed that his wife and her had father erected it and he didn't

know what it said. He also said that it was assembled and dissembled on Halloween night while he was working, though the date stamp on the photo refuted this. Daly was placed on administrative leave, and an internal investigation ensued during which the extent of Daly's conflicts and conduct vis-à-vis multiple neighbors came to light. Witness accounts and cell phone video chronicle in detail numerous instances of Daly's aggressive behavior, threats, insults, and intimidation directed at various residents, including children, even prompting one resident to relocate. Several neighbors were familiar with the Halloween display. Additionally, one of Daly's trainees recalled him telling her about the epitaph earlier in the month of October 2019. In light of the information obtained in the investigation, as memorialized in a 50-page report (Doc. 26-6), Daly was terminated, effective November 4, 2020, for conduct unbecoming of an officer and for lying to investigators. (Doc. 26-10).

Daly filed a charge of discrimination with the Missouri Human Rights Commission on November 23, 2020, and received a right-to-sue letter on December 7, 2021.[2] On March 22, 2022, he filed a complaint in this Court asserting two counts. In Count I, Daly asserts a claim of retaliation under the Missouri Human Rights Act, Rev. Stat. Mo. § 213.070, alleging that he was subjected to a hostile work environment after he reported the rumors constituting sexual harassment involving Officer Zarcone. In Count II, he asserts a claim under 42 U.S.C. § 1983, alleging that his First Amendment rights were violated when he was terminated as a result of the Halloween display.

The City moves for summary judgment on both counts. As to Count I, it asserts that Daly's

---

[2]   Daly's MHRC charge, as amended (Doc. 40), claims that he was harassed, denied equal pay and opportunity, and even criminally charged in retaliation for reporting the alleged sexual harassment involving Officer Zarcone. The charge omits entirely the facts and circumstances described in the City's internal investigation report and resulting termination letter.

alleged "mistreatment" did not rise to a level constituting retaliation in the form of a hostile work environment, much less that it was motivated by his advocacy for Zarcone.  As to Count II, the City submits that Daly was terminated for his unbecoming conduct vis-à-vis his neighbors and for lying to investigators about the Halloween decorations, not for engaging in protected speech.

## II.     Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Factual disputes that are irrelevant or unnecessary are not counted.  *Id*.  The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the Court considers the evidence and reasonable inferences in the light most favorable to the non-moving party.  *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).  To avoid summary judgment, the non-movant must demonstrate the existence of specific facts supported by sufficient probative evidence that would permit a finding in his favor on more than speculation.  *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017).  Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.    Discussion

### A.   Retaliation (Count I)

The MHRA's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice.  Mo. Rev. Stat. § 213.070.  A successful claim of a hostile work environment requires the plaintiff to show: (1) he

is a member of a group protected under the MHRA; (2) he was subjected to unwelcome harassment; (3) his membership in the protected group was a contributing factor in the harassment; and (4) a term, condition, or privilege of his employment was affected by the harassment. *McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 748 (Mo. App. E.D. 2020). Harassment affects a term, condition, or privilege of employment if it is "sufficiently severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment." *Id*. The harassing conduct must be severe and pervasive not only as viewed subjectively by the plaintiff but also as viewed objectively by a reasonable person. *Id*. The Court considers the totality of the circumstances. *Id*.

Daly claims that he was subjected to a hostile work environment in retaliation for his report of sexual harassment involving Officer Zarcone. Specifically, he cites tensions within the department particularly directed at him, exclusion from a lunch outing, discomfort with co-workers at social events, McCreary's statement that Daly would not succeed him as Chief, and the department's failure to take action in response to his reports of misconduct. The City moves for summary judgment on this claim, arguing that the events and circumstances Daly describes lack the severity that would give rise a jury question on this issue. The Court agrees.

Even accepting Daly's allegations as true, Chief McCreary had supervisory discretion whether to act on Daly's reports of misconduct. While the failure to correct any such conduct may reflect on the culture of the department, the Court fails to see how such personnel decisions involving other officers constitute hostility directed at Daly. And while the evidence may depict a negative culture at the time in question, the record lacks any instance or accumulation of events targeting Daly that a reasonable person objectively would consider so abusive or severe as to constitute an actionable hostile work environment. The social slights and tensions Daly describes

are entirely insufficient. *Compare e.g., McGaughy*, 604 S.W.3d at 749 (describing explicit racial bias and profane racial slurs and insults directed at an African-American employee); *Fuchs v. Dep't of Revenue*, 447 S.W.3d 727, 733 (Mo. App. W.D. 2014) (describing demeaning comments and scrutiny toward a disabled employee, including calling her "broken," limiting bathroom breaks, and denying leave for doctor visits); *Clark v. AT&T Mobility Services, L.L.C.*, 623 S.W.3d 197, 208 (Mo. App. W.D. 2021) (where a 52-year-old plaintiff was called "too old" and "uncoachable," was denied training, and her sales were diverted to younger employees).

Thus, even viewing the record in the light most favorable to Daly, the Court finds the evidence insufficient to create a genuine issue of material fact as to whether the City subjected Daly to a hostile work environment in retaliation for his advocacy on behalf of Officer Zarcone. Rather, the totality of circumstances as described by Daly himself amount to nothing more than "high school stuff."  As such, the City is entitled to summary judgment on Daly's claim of retaliation.

### B. First Amendment Violation (Count II)

The First Amendment restrains a government employer from retaliating against a public employee based on the employee's speech or associations. *Wingate v. Gage County Sch. Dist., No. 34,* 528 F.3d 1074, 1080–81 (8th Cir. 2008).  To establish a *prima facie* case of First Amendment retaliation, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action. *Wilson v. Miller*, 821 F.3d 963, 967–68 (8th Cir. 2016).  Whether the protected activity was a substantial or motivating factor in an employment decision is a question of fact, but the

sufficiency of the evidence to create an issue of fact for the jury is a question of law. *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008).

To avoid summary judgment, a plaintiff must either present direct evidence of retaliation or follow the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Williams v. Tucker*, 857 F.3d 765, 768 (8th Cir. 2017).  Direct evidence must be strong enough to show a specific link between the alleged discriminatory animus and the challenged decision sufficient to support a finding that an illegitimate criterion actually motivated the employment decision. *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 965 (8th Cir. 2006).  Under the *McDonnell Douglas* burden shifting framework, a plaintiff must set forth a *prima facie* case in order to shift the burden of producing a legitimate, non-retaliatory reason for the employment decision to the employer.  *Williams*, 857 F.3d at 768.  If the employer provides a non-retaliatory reason, then the employee must prove that the reason is a pretext for the retaliation.  *Id*.

Daly claims that the City violated his civil rights under 42 U.S.C. § 1983, and specifically his First Amendment right to free expression, by terminating him for displaying the Michael Brown epitaph as a Halloween decoration outside his residence.  The City asserts that the evidence establishes legitimate, non-retaliatory reasons for Daly's termination such that there is no triable issue for a jury.  Again, the Court agrees.  Upon review of the City's lengthy internal investigation report revealing Daly's egregiously unbecoming conduct vis-à-vis his neighbors and dishonest disclaimers regarding the Halloween display (Doc. 26-6), the Court has no difficulty concluding as a matter of law that there is no genuine issue of fact for the jury to resolve as to whether the City's reasons for termination were legitimate or instead pretexual.  The evidence establishes that Daly was terminated for misconduct and dishonesty, not for engaging in protected speech.

Moreover, even accepting *arguendo* that Daly *was* terminated due to the Halloween display, the evidence shows that the City acted within its authority. A government entity acting in its role as an employer may restrict speech that has some potential to affect the entity's operations. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). And a public safety entity has an even more significant interest than typical government employers in regulating the speech activities of its employees in order to instill public confidence. *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 834 (8th Cir. 2015). When the employer shows a sufficient adverse impact from the employee's speech, the court undertakes the *Pickering* balancing test to weigh the speaker's interests in free expression against the employer's interest in efficient operations. *Id*. at 833 (referring to *Pickering v. Bd. of Education*, 391 U.S. 563, 568 (1968)). The court considers (1) the need for harmony in the workplace; (2) whether the government's responsibilities require a close working relationship; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his duties. *Id.* at 835. The test is flexible, and the weight to be given to any factor varies depending on the circumstances of the case. *Id*.

Applying these factors to the present facts, the Court again has no difficulty concluding that there is no genuine issue of fact for the jury to resolve. Michael Brown was shot and killed by a St. Louis area police officer in 2014, sparking a national tempest around race relations and police conduct. In May 2020, just months before Daly's Halloween photo went viral, George Floyd was suffocated to death by a Minneapolis police officer, escalating political strife at the height of the COVID-19 pandemic. It was in this combustible context that the viral Facebook post of Daly's Halloween display, alongside a photo identifying him as a De Soto police officer, prompted national outrage and media attention and caused a massive disruption to the City and its

police department. Both the City and the department were inundated with citizen complaints, threats, and "an onslaught from media across the country." (Doc. 26-3 at 16). A protest and counter-protest followed, requiring extra staffing and security. (Doc. 26-11). Officers and other public servants feared for their personal safety and were advised to change their routines. (Doc. 26-12 at 6). The Assistant Chief explained, "With society and the way things had went [sic] in our country during the summer, there was great concern that this could go viral and potentially cause a protest or riots." (Doc. 26-4 at 40). The disruption lasted for several weeks and consumed a large majority of the City Manager's work time. (Doc. 26-11 at 37). As he explained, "You are held to the standard as a police officer. And when not just a minor disruption but a major disruption to city services and operations occurs due to actions that you've taken, then it does have to be taken into consideration of what effect did this have on the department and the city." (Doc. 26-2 at 34). On this record, the City's decision to terminate Daly in an effort to restore order to its operations and public confidence in its police force was entirely justified. *See Anzaluda*, 793 F.3d at 836 (affirming the district court's conclusion that the defendant fire department was entitled to qualified immunity). Returning to the *McDonnell Douglas* framework, the City has produced ample evidence demonstrating a legitimate, non-retaliatory reason for termination, and Daly has failed to present evidence permitting a reasonable jury to infer that the City's given reasons were a pretext for retaliation.

Thus, even viewing the record in the light most favorable to Daly, the Court finds the evidence insufficient to create a genuine issue of material fact as to whether the City wrongfully terminated Daly in retaliation for the Halloween display. Based on the totality of circumstances and weighing Daly's right to free expression against the City's paramount interests in effective operations, employee safety, and public confidence, the Court finds the City's personnel decision

well within its discretion as a public employer. As such, the City is entitled to summary judgment on Daly's First Amendment claim.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Jeff McCreary is **DISMISSED** as a named defendant in this matter.

**IT IS FURTHER ORDERED** that Defendant City of De Soto's motion for summary judgment is **GRANTED**. (Doc. 26).

A separate Judgment shall issue in accordance with this Memorandum and Order. Dated this 8th day of September 2023.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE